**In re Venita C. MARTENS, Debtor.**

**Bankruptcy No. 94–30628.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

July 28, 1994.

John J. Hunter, Sr., Trustee, Toledo, OH.

Mark S. Lindberg, Toledo, OH, for debtor.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Court's own Motion for Hearing pursuant to Dismissal of this case under the provision of 11 U.S.C. § 707(b). This Court has reviewed the arguments of counsel, exhibits as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Motion for Hearing pursuant to Dismissal of this case

under the provision of 11 U.S.C. § 707(b) should be Denied.

### FACTS

Debtor filed for relief pursuant to Chapter 7 of the Bankruptcy Code on March 23, 1994. At the time of filing, Debtor claimed to have net monthly income of One Thousand Seventy-seven and 35/100 Dollars ($1,077.35) and monthly expenditures of One Thousand Three Hundred Forty-nine and 00/100 Dollars ($1,349.00). Debtor claimed assets of Four Hundred Twenty and 00/100 Dollars ($420.00) and liabilities of Eight Thousand Two Hundred Thirty-five and 12/100 Dollars ($8,235.12).

On April 4, 1994, the Court filed an Order for Hearing Pursuant to Dismissal of this case under the provision of 11 U.S.C. § 707(b). A Hearing was convened on May 16, 1994 at which the Trustee and Debtor's Counsel appeared. The Hearing was continued pending the Meeting of Creditors pursuant to 11 U.S.C. § 341. The Trustee filed Comments on May 25, 1994 and on June 27, 1994, Debtor filed Amended Schedules I and J.

The Amended Schedules reflect monthly net income of Nine Hundred Eighty-four and 52/100 Dollars ($984.52). Included within Debtor's source of income is Two Hundred Twenty-eight and 72/100 ($228.72) received as child support. Expenses total One Thousand Two Hundred Thirty-seven and 65/100 Dollars ($1,237.65) per month. Of this amount, Two Hundred Sixteen and 65/100 Dollars ($216.65) is expended for child care. The only discretionary income appears to be the charitable contribution of Sixteen and 00/100 Dollars ($16.00) per month. According to the Trustee's Report, Debtors 1977 Dodge is "about to die"; she has no automobile insurance; her heating bills typically total Two Hundred and 00/100 Dollars ($200.00) per month; and she receives Fifty-six and 00/100 Dollars ($56.00) in child support per week.

### LAW

11 U.S.C. § 707

§ 707. **Dismissal.**

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

### DISCUSSION

This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and this Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 1334.

11 U.S.C. § 707(b) allows this Court, after notice and hearing, to dismiss a Chapter 7 Petition filed by a Debtor with primarily consumer debt upon a finding that to grant the requested relief would be a substantial abuse. *In re Krohn*, 886 F.2d 123 (6th Cir.1989). "Consumer debt" is defined under 11 U.S.C. § 101(8) as a debt incurred by an individual primarily for a personal, family, or household purpose. The debtor is said to have "primarily" consumer debt when more than one-half of the dollar amount owed is consumer debt. *In re Farrell*, 150 B.R. 116 (Bkrtcy.D.N.J.1992) (citing *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988)).

Courts have ascertained the meaning of "substantial abuse" from the totality of circumstances such as whether the debtor is seeking an advantage over creditors; whether the debtor is honest in his relationships with the creditors; or whether debtor is needy such that his financial predicament warrants the discharge of debts in exchange for liquidation of assets. *In re Krohn, supra,* at 126. Substantial abuse can be predicated upon either lack of honesty or want of need.

Those factors which are relevant to ascertaining debtor's honesty include good faith and candor in filing schedules and other documents; whether debtor engaged in any eve of bankruptcy purchases; and whether

debtor has been forced into filing a Chapter 7 petition by unforeseen or catastrophic events. *In re Krohn, supra,* at 126.

 Debtor's need is measured by an ability to repay debts out of future earnings. *In re Krohn, supra,* at 126 (citing *In re Walton,* 866 F.2d 981, 984–985 (8th Cir.1989)). Other relevant factors include whether debtor is eligible for adjustment under Chapter 13 of the Bankruptcy Code; whether there are state remedies available which may potentially ease debtor's financial predicament; whether debtor has relief available through private negotiations; and whether expenses can be significantly reduced without depriving debtor of adequate food, clothing, shelter and other necessities.

In the case at bar, Debtor has primarily consumer debt in that most, if not all, of her indebtedness was incurred by an individual primarily for personal or family purpose. In determining whether granting the relief requested would be a substantial abuse, the Court has reviewed Debtor's Amended Schedules I and J and the Trustee's Report. Debtor's Amended Schedules project that Debtor earns less than what she spends. However, the Trustee's Report indicates that Debtor testified during the Meeting of Creditors that her automobile is "about to die"; that she has exorbitant gas bills during the winter; and that she does not own automobile insurance. Although the Court finds the fact that Debtor's expenditures exceed her income suspect, there is no evidence that Debtor failed to exercise good faith and candor in completing the schedules or that she seeks an unfair advantage over Creditors. Debtor did not engage in eve of bankruptcy purchases as her indebtedness is mostly medical and medical related bills ensuing from 1989 through September, 1993. There is no evidence that Debtor was forced into filing a Chapter 7 petition by unforeseen or catastrophic events.

Need is measured by debtor's ability to repay debts from future earnings. In this case, Debtor is unable to meet her present indebtedness from her present income so it is unlikely that she would be eligible for adjustment under Chapter 13. Debtor's only disposable income appears to be the Sixteen and 00/100 Dollars ($16.00) per month contributed to charities. This amount, apportioned over a five (5) year period, only amounts to a potential eleven percent (11%) recovery for the unsecured Creditors. Debtor's ability to obtain certain state remedies or even enter into private negotiation with Creditors is severely limited in that she has inadequate consideration to effectuate a plan of repayment. The only other option is to reduce Debtor's household expenses. There appears to be no way of *significantly* (emphasis added) reducing expenses without depriving Debtor and her son of adequate food, clothing, shelter and other necessities. Thus, the Court finds that granting Debtor relief would not be a substantial abuse of the provisions of Chapter 7.

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

*Accordingly, it is*

**ORDERED** that the Motion for Hearing pursuant to Dismissal of this case under the provision of 11 U.S.C. § 707(b) be, and is hereby, **DENIED.**