**Robert N. KORNFIELD, and Karen E. Kornfield, Appellants,**

v.

**Carolyn S. SCHWARTZ, United States Trustee, Appellee.**

**No. 97–CV–6330L.**

United States District Court, W.D. New York.

Nov. 7, 1997.

David MacKnight, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, for Appellants.

Trudy A. Nowak, United States Trustee, Rochester, NY, for Appellee.

## DECISION AND ORDER

LARIMER, Chief Judge.

## BACKGROUND

Appellants, Robert N. Kornfield and Karen E. Kornfield, filed a Chapter 7 bankruptcy petition on July 30, 1996. On January 15, 1997, the United States Trustee ("U.S.Trustee") filed a motion to dismiss the petition for "substantial abuse" of the provisions of Chapter 7. Bankruptcy Judge John C. Ninfo, II, heard oral argument on the motion on February 12, 1997. Judge Ninfo granted the motion and dismissed the case in a Decision and Order entered June 23, 1997. *In re Carlton*, 211 B.R. 468 (Bankr.W.D.N.Y. 1997).[1] Appellants commenced the instant appeal on August 1, 1997.

The U.S. Trustee's motion to dismiss and the Bankruptcy Court's dismissal of appellants' case were based on 11 U.S.C. § 707(b), which provides that

> [a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

As Judge Ninfo noted in his June 23 decision, the statute does not define "substantial abuse," and the courts have not been entirely in agreement about what constitutes substantial abuse. *Carlton*, 211 B.R. at 476. In general, however, the term connotes the idea that it would be inequitable to grant the debtor relief from his debts because of his ability to pay his debts and because of the absence of any mitigating factors.

---

1. The decision also dismissed an unrelated petition by Donn B. and Donna M. Carlton. The Carltons have not appealed.

The legislative history of § 707(b) indicates that it was "aimed primarily at stemming the use of Chapter 7 relief by unneedy debtors." *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989). *See also In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) ("in seeking to curb 'substantial abuse,' Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor").

## DISCUSSION

### I. Claimed Procedural Errors

Appellants raise a gaggle of procedural matters that they claim require reversal. Appellants' claims are without merit. None of the items raised require reversal and only a few even warrant brief reference here.

First of all, appellants contend that the Bankruptcy Court erred in granting the U.S. Trustee's *ex parte* motion to extend the time within which to file a substantial abuse motion. I disagree.

Under Bankruptcy Rule 1017(e), the U.S. Trustee has sixty days from the first date set for the meeting of creditors pursuant to 11 U.S.C. § 341(a) in which to file a substantial abuse motion, "unless, before such time has expired, the court for cause extends the time for filing the motion." In the case at bar, that period would have expired on November 4, 1996.

In a motion dated October 23, 1996, the U.S. Trustee moved *ex parte* for a sixty-day extension. The general reason for the request was that the Chapter 7 trustee had been investigating whether a pension plan in which appellants claimed a $390,216 exemption was in fact exempt. The U.S. Trustee and the Chapter 7 trustee had agreed that if the plan were not exempt, it would be preferable for the Chapter 7 trustee to file an objection to the plan exemption rather than for the U.S. Trustee to file a substantial abuse motion, since a successful objection to the plan would result in a large dividend to appellants' creditors.

Judge Ninfo granted the motion to extend time on October 28, 1996. On December 24, 1996, appellants brought a motion to resettle the extension order. In essence, the motion was a motion for reconsideration. Appellants contended that the U.S. Trustee had not shown adequate cause for granting the extension, and that it was improper to have considered the motion *ex parte*.

The motion to resettle was heard on January 8, 1997. Judge Ninfo orally denied the motion, stating that he was "going to stand behind the order ..." Transcript ("Tr.") (App.Ex. D) at 19–20. His decision was reduced to a written order which was filed on January 10.

Appellants contend that the U.S. Trustee's *ex parte* motion for an extension of time violated their constitutional right of due process, the notice requirements of Bankruptcy Rules 9013 and 1017(e), and Rule 9003's proscription of *ex parte* communications. I find none of these claims to have merit.

Perhaps the single biggest flaw in appellants' arguments regarding this issue is that they did in fact have an opportunity to raise all these matters before the Bankruptcy Court through their motion to resettle. Judge Ninfo heard all the reasons advanced by appellants why they believed that the extension motion should not have been granted, and ruled that he nevertheless believed that the order was warranted. Appellants, then, were not prejudiced by his granting the order *ex parte*, since it appears that even if there had been prior notice and a hearing, Judge Ninfo would have granted it anyway.

The authority relied upon by appellants regarding this issue also does not support their claims of error. Regarding their due process claim, the Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), is inapposite, since it deals with notice requirements "in any proceeding which is to be accorded finality ..." *Id.* at 314, 70 S.Ct. at 657 (emphasis added). The extension order at issue here did not finally affect any of appellants' rights. Moreover, appellants' contention that the extension motion affected a constitutionally-protected liberty or property interest borders on the ludicrous. The U.S. Trustee's mere reference to possible substantial abuse, a term of art, could not reasonably be interpreted as accusing appellants of being "sin-

gularly, unusually abusive" or "immoral," as appellants contend in their reply brief.

Rules 1017(e), 9013, and 9003 also did not prohibit the motion from being granted *ex parte*. Rule 1017(e) is completely silent on the subject of whether a motion to extend time to file a substantial abuse motion requires prior notice. Cf. Bankr.R. 4004(b) (explicitly requiring notice on a motion to extend time to object to discharge). Rule 9013 expressly recognizes that some motions may be considered *ex parte*, and does not purport to delineate what motions may and which may not be so considered. It also gives the Bankruptcy Judge discretion to determine which entities must be served with notice when those entities are not specified by the rules. Rule 9003 is also inapplicable, since it only prohibits *ex parte* contacts in matters "not otherwise governed by these rules . . .," and in the case at bar the extension motion was proper under Rule 9013.

As stated, however, the main weakness in appellants' arguments is that Judge Ninfo did in fact hear all of appellants' arguments concerning the *ex parte* nature of the motion. He rejected them and reaffirmed the sixty-day extension. There is no reason to think that he would have reached a different conclusion had they presented those arguments to him prior to his decision on the motion to extend time. Appellants suffered no preju-

dice whatsoever by the fact that the motion originally was granted *ex parte*.

■ I also find that Judge Ninfo did not err in finding that sufficient cause existed to grant the motion to extend time.[2] Attached to the motion were copies of correspondence between the U.S. Trustee, the Chapter 7 trustee, and appellants' counsel. This correspondence included a September 5, 1996 letter from the Chapter 7 trustee to the U.S. Trustee, stating that he was concerned about the pension exemption and possible substantial abuse because of Robert Kornfield's $400,000 annual income from his practice of medicine. He stated that he hoped to be able to file a detailed objection to the plan exemption before the November 5, 1996 discharge objection deadline, adding that a successful objection would result in payment of "a huge dividend to the creditors," whereas "a substantial abuse motion, if successful, would push the debtor into Chapter 11, not a good place to be in regard to liquidating the profit sharing plan."

The correspondence also included a September 19, 1996 letter from the Chapter 7 trustee to appellants' attorney requesting certain information and expressing his "grave problems with [the plan's] exempt ability . . ." He stated that the U.S. Trustee's office "ha[d] not made up its mind" about whether to file a substantial abuse motion, and that the U.S. Trustee "would prefer not

---

**2.** Although even on *de novo* review I would find adequate cause here to have granted the motion to extend, I note that appellants have submitted no authority supporting their contention that the Bankruptcy Court's determination of cause is subject to *de novo* review. The only case they cite in this regard, *In re Chateaugay Corp.*, 109 B.R. 613 (S.D.N.Y.1990), *appeal dismissed*, 924 F.2d 480 (2d Cir.1991), does not even address the issue, and other cases involving review of findings of cause indicate that a decision granting a motion to extend time should be reviewed for abuse of discretion, while any factual findings underlying that decision should not be set aside unless they are clearly erroneous. *See, e.g., Hendry v. Schneider*, 116 F.3d 446, 449 (10th Cir. 1997) (reviewing district court's good-cause determination under Fed.R.Civ.P. 4(m) for abuse of discretion); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306 (3d Cir.1995) (same); *Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir.1994) (same); *Floyd v. United States*, 900 F.2d 1045, 1046 (7th Cir.1990) (same); *In re Southern Industrial Banking Corp.*, 205 B.R. 525,

532 (E.D.Tenn.1996) (reviewing bankruptcy court's finding of cause under Bankr.R. 7004 and Fed.R.Civ.P. 40 for abuse of discretion), aff'd, 112 F.3d 248 (6th Cir.1997) (affirming for reasons stated in district court decision); *Legacy, Ltd. v. Channel Home Ctrs., Inc.*, No. 91–4270, 1991 WL 497171, *13 (D.N.J. Dec. 12, 1991) (reviewing bankruptcy court's determination of cause regarding defendants' motion for extension of time to assume or reject leases pursuant to 11 U.S.C. § 365(d)(4) under clearly-erroneous standard), aff'd, 989 F.2d 682 (3d Cir.), *cert. denied*, 510 U.S. 865, 114 S.Ct. 184, 126 L.Ed.2d 143 (1993). Even the one district court case cited by appellants in support of their contention that cause did not exist here, *In re Farhid*, 171 B.R. 94 (N.D.Cal.1994), applied the clearly-erroneous standard to a bankruptcy court's denial of a motion to extend the time in which to object to discharge based on its finding that the movant had not been diligent. Affirming, the district court stated that it was "not to substitute its judgment for that of" the bankruptcy judge. *Id.* at 97.

to make a decision about filing any such motion until after the pension status is resolved. . . . So if and when I move to object to the pension exemption status, I will also move to extend the deadline for the UST to file any substantial abuse motion."

An October 22, 1996 letter from the Chapter 7 trustee to the U.S. Trustee repeated that "we decided that if I were to object to the exempt ability of the pension we would hold off any substantial abuse motion," and that "it will take a while to unearth such facts as would assist an exemption objection." Since he was still investigating the matter, he stated, "I will not be moving to object to the exemption before the deadline for the filing of a substantial abuse motion, which is in about two weeks."

The Bankruptcy Judge had all these letters before him when he granted the extension motion. When he denied appellants' motion to resettle the extension motion on January 8, 1997, he stated that he had believed that "the parties understood that [i.e., the filing of an extension motion] was going to happen . . . or there was some actual merit [to a substantial abuse motion], given the income level, and so forth," so he did not believe there were sufficient grounds to vacate the extension order. Tr. at 19. Judge Ninfo was correct in both respects. The letter from the Chapter 7 trustee to appellants' counsel shows that appellants had been apprised that a motion to extend time would be forthcoming, and as explained below, there was indeed merit to the substantial abuse motion. Under all the circumstances, then, the granting of this relatively modest sixty-day extension so that the case could be decided on the merits was more than adequately supported by cause.

## II. Dismissal of Appellants' Case

Appellants raise a host of challenges to the Bankruptcy Court's dismissal of their case for substantial abuse. I find them all to be meritless.

■ First, there is no merit to appellant's contention that their due process rights were violated because Judge Ninfo made factual findings without giving appellants an oppor-

tunity to be heard. Judge Ninfo heard oral argument on the substantial abuse motion, at which appellants were represented by counsel, so to say that they had no opportunity to be heard is simply untrue.

It should also be noted that not once at oral argument did appellants request an evidentiary hearing. Furthermore, Judge Ninfo gave appellants two weeks after that date to submit any additional relevant materials. There is no indication whatsoever that appellants availed themselves of that opportunity or requested any further hearing.

Appellants' assertion that Judge Ninfo somehow lulled them into believing that he was going to base his decision only on the pleadings, but that he then made findings about disputed factual matters, is also not supported by the record. The facts relied upon by Judge Ninfo related to appellants' income and debts, and those were uncontested. The only factual matter pointed out by appellants in this regard is the reasonableness of their children's tuition expenses. All Judge Ninfo said about this matter, however, was that appellants lived in a village with an excellent public school system that was more than capable of providing appellants' children with a good education. Appellants have not pointed out any evidence that they could have brought forward at a hearing that would have affected this finding.

■ With respect to the merits of the case, the Bankruptcy Court's factual findings will not be set aside unless they are clearly erroneous, Bankr.R. 8013, but his decision that appellants' petition amounted to substantial abuse is a matter of law that is reviewed *de novo. Fonder v. United States,* 974 F.2d 996, 999 (8th Cir.1992); *In re Green,* 934 F.2d 568, 570 (4th Cir.1991); *In re Ontiveros,* 198 B.R. 284, 287 (C.D.Ill.1996).

■ After reviewing the record, I find that the Bankruptcy Court correctly dismissed appellants' case for substantial abuse. I will not repeat Judge Ninfo's extensive factual findings in their entirety, but several of them are particularly noteworthy in reviewing his conclusion that it would be a substantial abuse of the bankruptcy laws to grant appellants relief under Chapter 7.

Appellants' schedules listed Robert Kornfield's gross monthly wages at $23,000. Applying a 50.8% tax withholding factor (the same percentage used in appellants' schedules) to appellants' 1996 gross monthly income of $25,939.16 yielded a monthly net income of $13,177. This substantial monthly net income was certainly a factor in Judge Ninfo's decision concerning appellants' ability to pay their debts.

Judge Ninfo did not rely only on appellants' income, however. He noted that they claimed current monthly living expenses of $13,115, which included $3000 per month to rent a home, $1200 for food, and $400 for clothing. By any measure, those sums are substantial. They owed over $500,000 on two mortgages on a previously-owned and foreclosed residence, and $34,000 in credit card purchases.

Based on these findings, Judge Ninfo found that "to grant the Kornfields a discharge in a Chapter 7 case would be a substantial abuse of the provisions of Chapter 7." Judge Ninfo set forth numerous reasons for this ruling. He found that the Kornfields unsecured debt was primarily consumer debt and that the Kornfields had an ability to pay these debts over time because of Robert Kornfield's exceptionally high income and because the Kornfield could certainly reduce their monthly living expenses to a more reasonable level. Judge Ninfo also found that the petition was not filed out of necessity because of a recent catastrophic event, but because of appellants' obvious unwillingness to change their extravagant lifestyle, to the detriment of their creditors. In addition, Judge Ninfo noted appellants' unwillingness to consider a Chapter 11 case, and he found that that fact "raise[d] concerns as to their honesty and good faith in their approach to the Bankruptcy System and their creditors." 211 B.R. at 482. Judge Ninfo also noted that the Kornfields could expect to have a high level income and that Robert Kornfield had in excess of $390,000 set aside in retirement funds, all or part of which might be able to be utilized to pay creditors or to supplement family income, should substantial payments to creditors be required.

The court stated that

the Kornfields ... have in essence argued to the Court that no one should involuntarily be required to live below their current means in order to repay creditors, notwithstanding prior financial mistakes, and the Bankruptcy System is there to ensure that that cannot happen, because it allows a debtor to simply file a Chapter 7 case, obtain a discharge from all of his debts, even though he has an Ability to Pay, continue to live an extravagant lifestyle, and retain substantial exempt funds. I don't happen to agree.

*Id.* at 482–83.

I am unconvinced by any of appellants' particular claims of error by the Bankruptcy Court. The lack of merit of their arguments, however, is thrown into particularly sharp relief when viewed against this factual background concerning appellants' assets and income. Appellants have not demonstrated any of these factual findings to be clearly erroneous, and in these circumstances it is difficult to quarrel with Judge Ninfo's conclusion that to allow appellants to discharge their debts under Chapter 7 would constitute substantial abuse of the bankruptcy laws.

With respect to appellants' individual claims of error, their contention that Judge Ninfo improperly applied a *"per se"* income test, *i.e.*, that he dismissed their case solely based on their income, is completely contradicted by Judge Ninfo's Decision and Order. Noting that courts have taken several different approaches in determining whether to grant a substantial abuse motion, Judge Ninfo applied a "blended approach" adopted from *Ontiveros,* 198 B.R. 284, which considers the debtors' ability to pay, the "totality of the circumstances," and whether the debtor has been dishonest or is non-needy. *Carlton,* 211 B.R. at 476. Applying this analysis, Judge Ninfo listed an extensive number of factors supporting his conclusion that the case should be dismissed. *Id.* at 480–83. No *per se* rule was used.

■ I am also unpersuaded by appellants' contention that the Bankruptcy Court improperly took the pension plan into account in his analysis. As stated, Judge Ninfo properly considered the totality of the cir-

cumstances in this case. One of those circumstances was appellants' interest in the pension plan. The cases cited by appellants stand for little more than the proposition that the bankruptcy laws provide some protection for such plans from the claims of creditors. That protection is not unlimited, however. The Bankruptcy Code makes pension plan payments exempt only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ..." 11 U.S.C. § 522(d)(10)(E). *See Matter of Kochell,* 732 F.2d 564, 565–66 (7th Cir. 1984) (bankruptcy court did not err in denying exemption for funds in two pension plans based on finding that, given debtor's high income, those funds were not reasonably necessary for his support).

■ Moreover, the fact that pension plans may be excludable or exemptible does not mean that the Bankruptcy Judge cannot take into account the debtors' interest in such a plan in assessing the debtors' situation as a whole. Judge Ninfo did not conclude that, based only on appellants' interest in the pension plan, they could use that asset to pay their debts. Rather, he found that, taking that interest into account in the context of appellants' entire financial situation, including their income and their ability to reduce their expenses, at least some of their over $390,000 in retirement funds might at some point be able to be used to pay creditors or supplement their income. That finding was not improper or clearly erroneous.

Appellants' other challenges to the Bankruptcy Court's findings for the most part are frivolous and require little comment. Their contention that Judge Ninfo should have taken into account the allegedly imprudent lending practices of appellants' mortgage lenders (based on their surprisingly candid assertion that "[i]t must have been evident to both banks that they were financing conspicuous consumption rather than making the average homestead loan") is in effect an argument that those who deliberately live beyond their means should be relieved of their obligation

to repay lenders because it was foolhardy to lend them money in the first place.

■ I also find that the Bankruptcy Court's factual finding that appellants could reduce their expenses by sending their children to public schools without detriment to the children is not clearly erroneous. Appellants have made nothing but conclusory allegations to the contrary.

Appellants' claim that there was some sort of impermissible intervention by the Chapter 7 trustee and First Union Home Equity Bank ("First Union"), a creditor, is meritless as well. Section 707(b) permits the bankruptcy court to dismiss a case for substantial abuse "on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest ..."

■ The language of this section, however, indicates that the *court* cannot dismiss a case for substantial abuse at the request or suggestion of a party in interest, not that the U.S. Trustee cannot make such a motion based on information obtained from a party in interest, as long as the U.S. Trustee uses her independent judgment in doing so.[3] *In re Clark,* 927 F.2d 793, 797 (4th Cir.1991).

■ A primary purpose of this amendment was to prevent harassment of debtors by creditors. *In re Joseph,* 208 B.R. 55, 60 (9th Cir. BAP 1997). That purpose is not thwarted by allowing the U.S. Trustee to make a substantial abuse motion based upon a referral from the Chapter 7 trustee, and the U.S. Trustee may do so.

In fact, the legislative history of the 1986 amendment of § 707(b), which added the language limiting which persons could bring a substantial abuse motion, indicates that Congress envisioned cooperation between the U.S. Trustee and the Chapter 7 trustee in such matters. The Joint Explanatory Statement of the Committee of Conference states in part:

The conferees anticipate that the panel trustee will work closely in conjunction

---

**3.** Although the Bankruptcy Code does not define "party in interest" for Chapter 7 purposes, there is authority that the term includes the Chapter 7 trustee. *See, e.g., In re Edmonston,* 107 F.3d 74, 77 (1st Cir.1997).

with the United States Trustee to assist in the discharge of the specific authority granted under Section 707(b). This would include bringing to the United States trustee's attention any information or evidence of fraud or abuse which may provide the basis for dismissal of a case under Section 707(b). The U.S. Trustee may, in his discretion, bring that information to the attention of the court. The conferees anticipate that panel trustees will frequently appear in court regarding the motions filed by the U.S. Trustee under Section 707(b), as amended. Such appearances will be in their capacity as panel trustee and not as a representative of the U.S. Trustee.

H.R. Conf. Rep. No. 99–958, at 47 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5227, 5246, 5248.

There is also no evidence here that the U.S. Trustee made the substantial abuse motion at the suggestion of a creditor, although that too is not prohibited by § 707(b). *Clark,* 927 F.2d at 797 (barring U.S. Trustee from acting at suggestion of creditor could have negative effect of deterring interested persons from making relevant information available to U.S. Trustee). First Union appeared at the hearing on the motion, but there is nothing in the Code that proscribes a creditor's participation in proceedings relating to a substantial abuse motion brought by the U.S. Trustee. Bankruptcy Rule 1017(e)'s provision that a case may be dismissed for substantial abuse only "after a hearing on notice to the debtor, the trustee, the United States trustee, and such other parties in interest as the court directs" suggests precisely the opposite.

Finally, I disagree with appellants' assertions that Judge Ninfo ignored the Bankruptcy Code's policy in favor of giving debtor's a "fresh start." A fresh start is not the same thing as a "free ride," which is what Judge Ninfo was concerned with preventing here, to the detriment of appellants' creditors. I agree with Judge Ninfo's assessment of this case and conclude, as did he, that dismissal for substantial abuse was entirely justified in this case.

## CONCLUSION

The Decision and Order of the Bankruptcy Court entered June 23, 1997, is affirmed, and the appeal is dismissed.

IT IS SO ORDERED.